UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| **TERRY WALKER, individually and on behalf of himself and all others similarly situated, et al.,** | : : : | |
| **Plaintiffs,** | : : : | |
| **vs.** | : : | **Case.  No.  5:02cv3 (DF)** |
| **RENT-A-CENTER, INC., et al.,** **Defendants.** | : : : | |

LEAD PLAINTIFFS' MEMORANDUM IN SUPPORT
OF APPROVAL OF FINAL SETTLEMENT

## I. INTRODUCTION

Lead Plaintiff Elizabeth Bergbower (the "Plaintiff") submits this Memorandum of

Law in support of the proposed settlement of the above-captioned consolidated class

action litigation (the "Action"). Through Plaintiff and the law firms of Nix, Patterson &

Roach, LLP, Milberg Weiss, LLP and Patton Roberts, PLLC (collectively referred to as

("Plaintiff Counsel") a fund consisting of $3.6 million in cash for the benefit of investors

(the "Settlement Fund") who purchased or otherwise acquired shares of Rent-A-Center,

Inc. ("RAC") common stock between April 25, 2001 and October 8, 2001, inclusive, and

were damaged thereby (the "Class") has been established.[1]

Plaintiff and Plaintiff's Counsel believe that the Settlement is fair, reasonable and

adequate under the circumstances.  As set forth in detail below and in the accompanying

Declaration in Support of Motion for Approval of the Proposed Settlement and Plan of

---

[1] The terms of the Settlement are contained in the Stipulation and Agreement of Settlement dated October 30, 2007 (Docket # 218) (the "Stipulation") which was preliminarily approved on October 31, 2007 (Docket #220), along with the form of Notice of Pendency of Class Action and Proposed Settlement, Motion for Attorneys' Fees and Settlement Fairness Hearing ("Notice").

Allocation and in Support of Application for Attorneys' Fees and Reimbursement of Expenses (the "Declaration"),[2] this Settlement is the product of hard-fought litigation and takes into account the specific risks of the case. Experienced counsel negotiated the Settlement for Plaintiff and Defendants with a firm understanding of both the strengths and weaknesses of their respective claims and defenses.

## II. OVERVIEW OF CLAIMS AND DEFENSES AND HISTORY OF THE CASE

A detailed summary of the history of this litigation, including extensive motion practice and discovery along the way toward settlement, is set forth in the Declaration. The Court is well aware of the fact that this case was strongly litigated and heavily briefed, including several motions to dismiss, several detailed amendments to the Complaint and a contested class certification battle.  As such, Plaintiff will not repeat the history of this case in this Brief.   Instead, Plaintiff respectfully incorporates the Declaration, the Notice and all pleadings on file in this matter herein as if fully set forth in their entirety.

## III. OVERVIEW OF SETTLEMENT AND PLAN OF ALLOCATION

The Settlement is the culmination of litigation that has been conducted by experienced and competent counsel representing all parties.  Throughout the Action, it was Defendants' position that this case had no merit.  In the discussions and settlement negotiations that progressed during the course of the Action, Defendants vigorously asserted their arguments and would have pressed them in pre-trial motion practice and at trial.  As noted above, the Settlement provides for the creation of a cash Settlement Fund of $3.6 million for the benefit of the Class.

---

[2] The Declaration is attached hereto as Exhibit A and is incorporated herein.

The Settlement provides that, after deduction of court awarded fees and expenses, the Settlement Fund will be allocated among the Class Members who file qualified Proofs of Claim, as defined in the Stipulation.  The Plan of Allocation recognizes Plaintiff's allegations that the price of RAC common stock was artificially inflated by reason of allegedly false and misleading statements made by Defendants.  It also recognizes that the date and manner of the acquisition of RAC common stock affects the eligibility for and amount of recovery.[3]

## IV. THE NOTICE CAMPAIGN MEETS ALL REQUIREMENTS OF RULE 23 AND DUE PROCESS

As noted above, copies of the Court-approved Notice describing the Settlement terms, the procedures for opting out of the Class or objecting to the Settlement, and providing details regarding the Settlement Hearing were mailed to 18,781 potential Class Members or nominees.[4]  Furthermore, the Court-approved Publication Notice was published in *Investor's Business Daily* on November 30, 2007.   In addition, a press release was issued over the National Circuit of Business Wire on November 30, 2007, at 6:30 AM Eastern Time Zone.[5]

The Notice was tailored to reach all Class Members.  The mailed and published notice explains the class action, the Settlement, the Plan of Allocation, the anticipated fee and expense requests and the rights and options of Class Members.  This program complies with the requirements of Rule 23 of the Federal Rule of Civil Procedure and

---

[3] The Plan of Allocation is described in detailed in the Notice approved by the Court at pages 9-10.

[4] *See* Affidavit of Gene Kennedy of Epiq Class Actions & Claims Solutions, Inc. Re: A) Mailing of the Notice and the Proof of Claim and B) Report on Requests for Exclusion Received, attached as Exhibit B and incorporated herein by reference.

due process and is similar to the procedures approved in other cases.  *See, e.g., Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1374-75 (9th Cir. 1993) (notice generally describing terms of settlement and formula for computing awards before hearing met requirements of Rule 23 and due process); *Smith v. Tower Loan of Miss., Inc*., 216 F.R.D. 338, 379 n.29 (S.D. Miss. 2003) (due process satisfied when notice provided in Rule 23(b)(2) settlement).

## V. FINAL CERTIFICATION OF THE CLASS AS A SETTLEMENT CLASS IS APPROPRIATE PURSUANT TO RULE 23

On October 31, 2007, this Court entered its Preliminary Approval Order, which preliminarily certified the following defined Class:

> All persons or entities who purchased or otherwise acquired shares of Rent-A-Center, Inc. ("RAC") common stock between April 25, 2001 and October 8, 2001, inclusive, and were damaged thereby.

Plaintiff now moves for final certification of the Class for purposes of settlement.

Provided that all of the requirements of Rule 23 of the Federal Rules of Civil Procedure are met, it is appropriate to certify a class for purposes of a settlement. *Amchem Prod., Inc. v. Windsor,* 521 U.S. 591 (1997); *Shaw v. Toshiba Am. Info. Sys., Inc.,* 91 F. Supp. 2d 942, 952 (E.D. Tex. 2000); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 451 (S.D.N.Y. 2004). The decision whether to certify a settlement class is left to the sound discretion of the district court.  *See, e.g., Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) ("the district court maintains great discretion in certifying and managing a class action").  It is well-established that courts have adopted a liberal construction of Rule 23 in shareholder suits seeking class action certification.  *See, e.g., In re Scott Paper Co. Sec. Litig.,* 142 F.R.D. 611, 614 (E.D. Pa.

---

[5] *See* Affidavit of Paul J. Andrejkovics Re: Publication of the Summary Notice of Pendency of Class Action, Proposed Settlement and Settlement Hearing,  attached as Exhibit C and incorporated herein by reference.

1992) ("[T]he Third Circuit has adopted a liberal construction of Rule 23 when considering shareholder suits seeking class action certifications."); *Korn v. Franchard Corp.,* 456 F.2d 1206, 1209 (2d Cir. 1972) (in determining class certification, courts must be "mindful of the admonition of liberality towards demands for class suit status in securities litigation").

As courts have explained, "[a] district court must first find that a class satisfies the requirements of Rule 23, regardless whether it is certifying the class for trial or for settlement." *In re Lease Oil Antitrust Litig.,* 186 F.R.D. 403, 418 (S.D. Tex. 1999); *See Amchem,* 117 S. Ct. at 2248 ("The safeguards provided by the Rule 23(a) and (b) class-qualifying criteria, we emphasize, are not impractical impediments --shorn of utility --in the settlement class context."); *Shaw,* 91 F.Supp.2d 942, 952 (E.D. Tex. 2000). However, "[t]he district court may take the proposed settlement into consideration when examining the question of certification." *Amchem*, 117 S. Ct. 2248, n.40.  Additionally, "a district court [determining whether to certify a class for settlement purposes only] need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."  *Id*. at 2248. Finally, noting certain concerns peculiar to settlement classes, both the Supreme Court and other courts have stressed the importance of ascertaining that the class is being adequately represented. *See id.*; *In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 308 (3d Cir. 1998).

In order to be certified, a class must satisfy the four requirements of Rule 23(a) and fit within one of the categories of class actions set forth in Rule 23(b).  The Class here easily satisfies all the requirements of Rule 23 and should be certified for purposes of settlement.

**A.**     **The Class Satisfies The Requirements of Rule 23(a)**

**1.**     **The Class Is Sufficiently Numerous** - To meet the requirement of numerosity, the Class representatives need only show that it is difficult or inconvenient to join all the members of the Class.  *See Zeidman v. J. Ray McDermott Co.,* 651 F.2d 1030, 1038 (5th Cir. 1981); *Varacallo v. Mass. Mut. Life Ins. Co*., 226 F.R.D. 207, 229 (D.N.J. 2005); *Maywalt v. Parker & Parsley Petroleum Co.,* 147 F.R.D. 51, 55 (S.D.N.Y. 1993). During the Class Period, there were millions of shares of RAC common stock outstanding.  Further, over 17,507 potential Class Members or nominees were identified by the Claims Administrator.  *See* Exhibit B.  The threshold for a presumption of impracticality of joinder is thus easily exceeded.

**2.**     **Common Questions Of Law Or Fact Exist** - The commonality prong of Rule 23 focuses on whether there are "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2) (emphasis added); *see also Ogden v. AmeriCredit Corp.*, 225 F.R.D. 529, 531 (N.D. Tex. 2005) ("*Ogden*"). Generally, courts have liberally construed the commonality prerequisite, holding that the "threshold of commonality is not high." *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986); *see also Basco v. Wal-Mart Stores, Inc.*, 216 F.Suppl2d 592, 599 (E.D. La. 2002).  "The commonality requirement is satisfied even where there is not a complete identity of facts . . . so long as the party opposing the class has engaged in some course of conduct that affects the proposed class and gives rise to causes of action requiring similar elements." *Zupnick v. Thompson Parking Partners Ltd.*, [1990 Transfer Binder] Fed. Sec. L. Rep. (CCH) & 95,388, at 96,907 (S.D.N.Y. July 31, 1990) (citations omitted).

Here, the primary issues in all of Plaintiff's claims asserted on behalf of the Class are whether: (1) Defendants issued false and misleading press releases and misleading

financial statements in violation of Section 10(b)(5); and (2) whether Defendants made false and misleading statements and omissions in the registration statements and prospectus filed in connection with a secondary offering in violation of Section 11 as part of a scheme to artificially inflate the value of RAC common stock. Accordingly, the commonality requirement is satisfied.

3.      **Plaintiff's Claims Are Typical Of Those Of The Class** - Typicality does not require that the interests of the named representatives and the class members be identical. *Lehorky v. Tidel Tech., Inc.*, 220 F.R.D. 491, 500 (S.D. Tex. 2004); *Philips v. Joint Legislative Comm.,* 637 F.2d 1014, 1024 (5th Cir. 1981).  Within the Class, the Plaintiff's claims, which arise from the same course of conduct and are predicated on the same legal theories as the claims of all other members of the class, easily satisfy the typicality requirement of Rule 23(a).  *In re Dynegy, Inc. Sec. Litig.*, 226 F.R.D. 263, 269 (S.D. Tex. 2005) ("*Dynegy*"); *see also Durrett v. John Deere Co.,* 150 F.R.D. 555, 558 (N.D. Tex. 1993); *Shipes v. Trinity Indus.*, 987 F.2d 311, 316 (5th Cir. 1993) (test for typicality, like commonality, is not demanding).

4.      **Bergbower is an Adequate Representative Of The Class** - The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent."  *Amchem,* 117 S. Ct. at 2236; *Ogden*, 225 F.R.D. at 532. The factors relevant to a determination of adequacy are:  (1) the absence of potential conflicts between the named plaintiff and the class members and (2) that counsel chosen by the representative parties is qualified, experienced and able to vigorously conduct the proposed litigation.  *In re Universal Access, Inc. Sec. Litig.*, 209 F.R.D. 379, 386 (E.D. Tex. 2002); *see also In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 291 (2d Cir. 1992); *Longden v. Sunderman*, 123 F.R.D. 547, 557 (N.D. Tex. 1988).

Here, the proposed class representative appointed by the Court as Lead Plaintiff, Elizabeth Bergbower, is a member of the Class. There are no conflicts between her and the absent members she represents. Indeed, regardless of the specific claims under which she or an absent Class member may be entitled to recover, all of the claims asserted in this Action involve a predominant commonality of interest, which negates any conflict. *See, e.g., Torrisi*, 8 F.3d at 1378; *Cf., In re Corrugated Container Antitrust Litig.,* 643 F.2d 195, 208 (5th Cir. 1981) ("'so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes'"). Moreover, Bergbower stayed informed of, monitored and supervised the litigation.

Bergbower's adequacy is further demonstrated by the fact that she retained experienced counsel to bring this Action against Defendants. Plaintiff's Counsel include some of the preeminent class action attorneys in the country, who have qualified as lead counsel in this and other securities class actions.  Plaintiff's Counsel has a proven track record in the prosecution of class actions, and has successfully litigated many major class action cases.[6]   Given the lack of conflict and the retention of experienced counsel, Bergbower is an adequate class representative.

**B.**     **The Requirements Of Rule 23(b)(3) Are Also Satisfied**

Rule 23(b)(3) authorizes certification where, in addition to the prerequisites of Rule 23(a), common questions of law or fact predominate over any individual questions and a class action is superior to other available means of adjudication.  *Amchem,* 117 S. Ct. at 2232-35; *see also Robinson v. Texas Auto Dealers Ass'n*, 387 F.3d 416, 420 n. 8 (5th Cir. 2004).  This case easily meets the requirements of Rule 23(b)(3).

---

[6] The qualifications of Plaintiffs' Counsel are set forth in the resumes attached hereto as Exhibit D.

1.      **Common Legal And Factual Questions Predominate In This Action** –
"Predominance is a test readily met in certain cases alleging consumer or <u>securities fraud</u>
<u>or violations of the antitrust law</u>."  *Amchem*, 117 S.Ct. at 2250 (emphasis added); *see also*
*Dynegy*, 226 F.R.D. at 270.  In this case, Defendants' alleged liability for all of the claims
asserted on behalf of the Class arise from the primary issue of whether Defendants issued
false and misleading press releases and other statements and omissions in the registration
statements and prospectus filed in connection with a secondary offering as part of a
scheme to artificially inflate the value of RAC common stock. This is the central issue in
the case and it predominates over any individual issues that theoretically might exist.

2.      **A Class Action Is The Superior Means To Adjudicate Plaintiffs'**
**Claims** - The second prong of Rule 23(b)(3) is satisfied by the Settlement itself.  As
explained in *Amchem*, "[c]onfronted with a request for settlement-only class certification,
a district court need not inquire whether the case, if tried, would present intractable
management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be
no trial."  117 S. Ct. at 2248; *see also McNamara v. Bre-X Minerals, Ltd.*, 214 F.R.D.
424, 427 (E.D. Tex. 2002).  Thus, any manageability problems that may have existed
here (and Plaintiff knows of none) are eliminated by the Settlement.

For the foregoing reasons, the requirements of Rule 23 have been met and the
Class should be certified for purposes of this Settlement.

## VI. THE PROPOSED SETTLEMENT SHOULD BE APPROVED AS FAIR, ADEQUATE AND REASONABLE

### A.     <u>The Fifth Circuit Favors Settlement And Presumes The Fairness Of A Settlement Proposed By Competent And Experienced Counsel</u>

The standard for reviewing a proposed settlement of a class action, as repeatedly
enunciated by the Fifth Circuit, is whether the proposed settlement is "'fair, adequate and

reasonable and is not the product of collusion between the parties.'" *Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004); *see also Ruiz v. McKaskle*, 724 F.2d 1149, 1152 (5th Cir. 1984) (*per curium*); *Cotton v. Hinton,* 559 F.2d 1326 (5th Cir. 1977). In applying this standard, the Court must determine whether, in light of the claims and defenses asserted by the parties, the proposed compromise represents a "reasonable evaluation of the risks of litigation." *Florida Trailer & Equip. Co. v. Deal,* 284 F.2d 567, 571 (5th Cir. 1960); *see also Steiner v. Fruehauf Corp.*, 121 F.R.D. 304, 305-06 (E.D. Mich. 1988).

It has long been settled that compromises of disputed claims are favored by the courts. *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *see also Purdie v. Ace Cash Express, Inc.,* 2003 WL 22976611 at *4 ("particularly in class action suits, there is an overriding public interest in favor of settlement") ("*Purdie*"). The Fifth Circuit consistently has held that, as a result of their highly-favored status, settlements "'will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits.'" *Miller,* 559 F.2d at 428 (citations omitted); *Pearson v. Ecological Sci. Corp.,* 522 F.2d 171, 176 (5th Cir. 1975); *E.N. Bisso & Son, Inc. v. World Marine Transport & Salvage, Inc*., 1996 WL 28520 at *3 (E.D. La. 1996).

Settlements of class actions are "particularly favored" and are not to be lightly rejected. *Maher v. Zapata Corp.,* 714 F.2d 436, 455 (5th Cir. 1983); *see also Cotton,* 559 F.2d at 1331; *Purdie*, 2003 WL 22976611 at *4. In the case of class actions, the Fifth Circuit has held that "there is an overriding public interest in favor of settlement," because such suits "have a well deserved reputation as being most complex." *Cotton,* 559 F.2d at 1331; *accord Purdie*, 2003 WL 22976611 at *4; *Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976). Thus, in deciding whether to approve a

10

settlement, the trial judge need not decide the merits of the action or substitute a different view of the merits for that of the parties or counsel.  *Maher*, 714 F.2d at 455.

In weighing the benefits obtained by the agreement of settlement against benefits dependent on the likelihood of recovery on the merits, courts are not expected to balance the scales perfectly.  The "trial court should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concession might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.'"  *Cotton,* 559 F.2d at 1330 (citations omitted); *see also In Lease Oil Antitrust Litig. (No. II)*, 186 F.R.D. 403, 424 (S.D. Tex. 1999).  The very object of a compromise "is to avoid the determination of sharply contested and dubious issues."  *Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971).

Where as here, experienced counsel has negotiated a settlement at arm's-length, a strong initial presumption is created that the compromise is fair and reasonable.  *United States v. Tex. Educ. Agency*, 679 F.2d 1104, 1108 (5th Cir. 1982); *see also Rolland v. Cellucci*, 191 F.R.D. 3, 6 (D. Mass. 2000).  The Fifth Circuit has recognized that courts must rely to a large degree on the judgment of competent counsel, terming such counsel the "linchpin" of an adequate settlement. *Reed v. Gen. Motors Corp.,* 703 F.2d 170, 175 (5th Cir. 1983).  Thus, if experienced counsel determines that a settlement is in the class's best interest, "the attorney's views must be accorded great weight."  *Pettway v. Am. Cast Iron Pipe Co.,* 576 F.2d 1157, 1216 (5th Cir. 1978).

When examined under the applicable criteria, this Settlement is an excellent result for the Class. It is Plaintiff's Counsel's judgment that a serious question exists regarding whether a more favorable monetary result against Defendants could or would be attained after trial and the inevitable post-trial motions and appeals.  The Settlement achieves a

prompt and substantial recovery for Class Members and is unquestionably superior to another possibility that would have existed if the Action continued: No recovery at all.

Once satisfied that counsel adequately represented the Class and has bargained for the proposed settlement in good faith, the "only question" for the Court to determine "is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval." *McNary v. Am. Sav. & Loan Ass'n,* 76 F.R.D. 644, 649 (N.D. Tex. 1977) (citations omitted).  To assist the district court in reaching this determination, the Fifth Circuit has established a six-pronged objective test to be applied to the proposed settlement by the Court, using these factors:

1. The assurance that there is no fraud or collusion behind the settlement;

2. The stage of the proceedings and the amount of available discovery;

3. The probability of plaintiff's success on the merits;

4. The range of possible recovery and certainty of damages;

5. The complexity, expense and likely duration of the litigation; and

6. The opinions of class counsel, class representatives and absent class members.

*Newby*, 394 F.3d at 301; *In re Lease Oil Antitrust Litig.,* 186 F.R.D. 403, 431 (S.D. Tex. 1999) *citing Reed*, 703 F.2d at 172; *Parker v. Anderson,* 667 F.2d     1204, 1209 (5th Cir. 1982); *see also Salinas v. Roadway Express, Inc.,* 802 F.2d 787, 789 (5th Cir. 1986).

This Settlement easily passes muster when examined in light of these six criteria.

**1. There Is No Fraud Or Collusion Behind The Settlement** - There is no hint of collusion in this Action.  Plaintiff's Counsel have many years of experience in litigating securities fraud class actions and have negotiated numerous other class settlements that have been approved by this and other courts throughout the country.  Plaintiff's Counsel

negotiated at arm's-length with Defendants' counsel and the parties entered into this Settlement fully informed about the strengths and weaknesses of their claims.

The settlement negotiations were hard-fought and protracted. The agreement-in-principle required extensive negotiations regarding the scope of the releases and the establishment of opt-out thresholds, among other things, in addition to the amount to be paid in the Settlement. Thus, the Settlement has been achieved only through tenacious and vigorous arm's-length negotiations and, as demonstrated by the excellent result, the interests of Class Members.

**2. The Stage Of The Proceedings At Which Settlement Was Achieved And The Amount Of Discovery Completed** - Both the knowledge of Plaintiff's Counsel and the proceedings themselves reached a stage where an intelligent evaluation of the case and the propriety of the Settlement could be made.  As set forth more fully in the Declaration, Plaintiff's Counsel conducted a thorough and extensive investigation of the facts during the course of the Action.  For example, prior to filing the Amended Complaint, Plaintiff's Counsel reviewed and analyzed a voluminous amount of documents obtained from various public and private sources relating to RAC and its business and operations, conducted depositions of key RAC personnel and reviewed RAC's document production.

In addition, the case was heavily litigated and had progressed to a stage where settlement was possible.  A brief chronology describing the litigation follows:

1. Plaintiff's Counsel prepared and filed a Second Amended/Consolidated Class Action Complaint which, in addition to Defendants RAC and J. Ernest Talley, Mark E. Speese, Mitchell E. Fadel and Robert D. Davis, also named four other directors of RAC (L. Dowell Arnette, Laurence M. Berg, Peter P. Copses and J. V. Lentell,

collectively the "Later Added Directors") and four underwriters of the Public Offering (Morgan Stanley Dean Witter Co., Bear Stearns, Co., Lehman Brothers Holding, Inc., and Robinson Humphrey Co., collectively the "Underwriters").  All of the Defendants moved to dismiss the Second Amended/Consolidated Class Action Complaint and after extensive briefing and a June 26, 2003, hearing, the Court, by order dated September 30, 2003, dismissed the Second Amended/Consolidated Class Action Complaint without prejudice and granted Plaintiffs leave to amend.

2.      On July 7, 2004, Plaintiffs filed their Third Consolidated and Amended Class Action Complaint (the "Complaint").  On July 24, 2003, the Court dismissed Plaintiff's claims against Defendant L. Dowell Arnette with prejudice because he was deceased before the Action was filed.  On August 23, 2004, and August 25, 2004, the Later Added Directors, Underwriters and the Defendants renewed their motions to dismiss.  Plaintiff filed opposition papers on October 6 and 13, 2004.  Defendants filed their replies on October 13, 2004, November 17, 2004, and November 18, 2004.  By Orders dated July 25, 2005, the Court granted in part and denied in part Defendants' motions to dismiss the Complaint and dismissed the claims against the Later Added Directors and the Underwriters with prejudice as being time-barred under the statute of limitations.

3.      On August 15, 2005, Defendants filed their answer to the Complaint denying any liability and asserting various affirmative defenses.

4.      On August 18, 2005, Defendants filed a motion to certify the Court's order on the motion to dismiss for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Plaintiffs responded on August 30, 2005.  The motion was denied on November 14, 2005.

5.      On November 30, 2005, the parties made their initial disclosures pursuant

to Rule 26(a)(1) of the Federal Rules of Civil Procedure.

6.      Plaintiffs filed a motion for class certification on March 24, 2006.  Lead Plaintiff Elizabeth Bergbower was the only Plaintiff seeking to be a class representative. Defendants filed a response on May 8, 2006, and Plaintiffs filed a reply on June 2, 2006. The Court held a hearing on the motion on June 22, 2006, but had not ruled when the parties reached the Settlement.

7.      On April 27, 2006, Plaintiffs filed an unopposed motion to withdraw Brad Bulloch, Joan C. Comeau and Mark Rice as Lead Plaintiffs.  The Court granted the motion on April 28, 2006.  Elizabeth Bergbower is now the sole Lead Plaintiff and Class Representative.

8.      The parties mediated the case with mediator Gary McGowan on February 13, 2007, but did not resolve the case at that time.  The parties subsequently mediated this case with retired United States District Judge Layn R. Phillips on September 19, 2007. Subsequent negotiations conducted through Judge Phillips resulted in this Settlement.

As a result of the foregoing, prior to reaching the Settlement, Plaintiff's Counsel fully appreciated the strengths and weaknesses of Plaintiff's claims.

In sum, the parties reached an agreement to settle only after they had a "full understanding of the legal and factual issues surrounding this case."  *Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996).  Nothing more is required.  In fact, courts have held that a great amount of formal discovery is not a "necessary ticket to the bargaining table."  *Newby*, 394 F.3d at 306; *see also In re Corrugated Container Antitrust Litig.*, 643 F.2d at 211 (citing *Cotton*, 559 F.2d at 1332).  Having completed sufficient investigation to properly evaluate the case, Plaintiff's Counsel have managed to settle this Action on a favorable basis without unduly prolonging it and without

undertaking additional expensive deposition and document discovery, further motion practice and trial.  Plaintiff's Counsel are satisfied that the Settlement is the best possible resolution of this litigation when all factors are taken into consideration.

**3. The Probability Of Success On The Merits** - As in every complex case of this kind, Plaintiff faced formidable obstacles to recovery at trial, both with respect to liability and damages.  *See, e.g., Rubenstein v. Republic Nat'l Life Ins. Co.*, 74 F.R.D. 337, 347  (N.D. Tex. 1976) ("Stockholder litigation is notably difficult and unpredictable and in these circumstances the courts have displayed a healthy skepticism in the face of optimistic forecasts or large demands.").[7]

Recognizing the many uncertainties and delays inherent in litigation, courts have held that to justify a proposed settlement, a plaintiff must establish only that, all things considered, "it is prudent to eliminate the risks of litigation to achieve specific certainty though admittedly it might be considerably less than were the case fought to the bitter end."  *Florida Trailer and Equip. Co. v. Deal,* 284 F.2d 567, 573 (5th Cir. 1960).  Of course, substantial risks and uncertainties are present in most securities cases, but the risks in this case, which twice survived a motion to dismiss (in part), were particularly significant, and made it far from certain that <u>any</u> recovery for the Class would be obtained -- let alone the amount recovered here.  Post-PSLRA rulings in this and other circuits make it clear that the risk of no recovery has increased exponentially since the PSLRA was adopted in 1995, and this case was no exception.

The primary issue in all of Plaintiff's claims asserted on behalf of the Class is

---

[7] In evaluating the strengths and weaknesses of Plaintiff's case, the Court must take special care not to conduct something akin to a trial on the merits.  *See, e.g., Shaw,* 91 F. Supp. 2d at 959 ("When assessing the fairness of a proposed class settlement, the trial judge, 'must not try the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trial.'") (citing *Reed*, 703 F.2d at 172).

whether Defendants issued false and misleading press releases and other statements and omissions in the registration statements and prospectus filed in connection with a secondary offering as part of a scheme to artificially inflate the value of RAC common stock.  To establish liability for these claims, Plaintiff would have the burden of proving, *inter alia*, that Defendants participated in the public dissemination of misleading information and that the information was material.  *TSC Indus. v. Northway, Inc.,* 426 U.S. 438, 449 (1976).

Although Plaintiff believes that her claims are meritorious, she and her counsel recognize that success at trial is far from guaranteed.[8]   Some of the more significant of these risks are discussed below.

First, as noted above, the alleged misrepresentations and omissions underlying all of Plaintiff's claims concern, in large part, statements made by Defendants regarding RAC's financial condition during the Class Period as part of a scheme to artificially inflate the value of RAC's securities.  Accordingly, the Action would require the introduction of extensive evidence regarding the fundamentals of the rent-to-own industry and, more importantly, the proper method for accounting in that industry.  There is no certainty how a jury would decide the fundamental issue of whether Defendants' statements during the Class Period regarding RAC's financial condition were materially

---

[8] *See In re Ikon Office Solutions, Inc.,* 194 F.R.D. 166, 194 (E.D. Pa. 2000) (awarding a fee of 30% of a settlement fund of $111 million, acknowledging that "securities actions have become more difficult from a plaintiff's prospective in the wake of the PSLRA."); *see also* Elliot J. Weiss & Janet Moser, *Enter Yossarian: How to Resolve the Procedural Catch-22 That the PSLRA Creates*, 76 Wash. U.L.Q. 457, 459 (1998) (noting that the PSLRA made it more difficult to set forth a claim and survive a motion to dismiss); Eugene Zelensky, *New Bully on the Class Action Block--Analysis of Restrictions on Securities Class Actions Imposed by the PSLRA of 1995*, 73 Notre Dame L. Rev. 1135 (1998).  In addition, the court in *Ikon* went on to indicate a number of additional factors that have made litigation of securities class actions more difficult: "The act imposes many new procedural hurdles, including restrictions on the types of plaintiffs who may serve as representatives and requiring increased court intervention in the selection of lead counsel. . . . It also substantially alters the legal standards applied to securities fraud claims in ways that generally benefit defendants rather than plaintiffs."  *In re Ikon Office Solutions, Inc.,* 194 F.R.D. at 194-95 (citations omitted).

false or misleading when made.

In this regard, from the outset of the litigation Defendants have maintained that Plaintiff's allegations of misrepresentations were premised on a fundamental misunderstanding of Defendants' business plan and industry.  Accordingly, Defendants maintained that the challenged public statements were not actionable because they were accurate when made.  An additional element of risk in establishing the falsity of Defendants' statements would be posed by conflicting expert testimony that the parties undoubtedly would introduce regarding what factors should be considered in determining whether the statements were, in fact, false.  In addition, Plaintiff faced the risk that the Class would not be certified and that RAC's accounting methods would ultimately be found proper.  Thus, the misleading nature of Defendants' statements during the Class Period could not be determined by application of a bright-line test, and would require the fact-finder to weigh various competing considerations, which is an inherently unpredictable exercise.[9]

Plaintiff also faced the risk that additional discovery might undermine Plaintiff's ability to establish liability.  Thus, Plaintiff faced the very real risk that she would not be able to establish that the statements at issue were materially false when made, an essential element to Plaintiff's claims, as well as the risk that all Defendants might not be held liable for all of the statements made during the Class Period.

### 4. The Range Of Possible Recovery And The Difficulties In Proving Damages

Even if Plaintiff was successful in establishing liability at trial, they would face substantial risks in proving damages.  Plaintiff has avoided this profound uncertainty

---

[9] Since the parties disagreed vigorously over the propriety of RAC's accounting methods, this issue would have required a "battle of experts" at trial, with the resulting risk that such a situation presents.

through this Settlement.

Plaintiff maintained that, had all of the alleged material facts with respect to RAC been adequately disclosed, the value of RAC common stock during the Class Period would have been substantially lower than the levels at which it actually was traded. Plaintiff recognizes that the traditional formulation of damages for a defrauded investor under §10(b) is the difference between the price paid for the investment and its "fair value" in the absence of fraud at the time of the purchase. *See In re Letterman Bros. Energy Sec. Litig.,* 799 F.2d 967, 972 (5th Cir. 1986); *see also Randall v. Loftsgaarden*, 106 S.Ct. 3143, 3155 (1986) (concurring opinion, J. Blackman).

Plaintiff would have faced serious challenges at trial in proving that Defendants' alleged fraud caused damages.  Defendants would undoubtedly argue that, during the Class Period, they made no materially false and misleading statements. Moreover, regardless of any misrepresentations, Defendants undoubtedly also would argue that factors unrelated to their statements contributed to any decline in value of RAC stock.

While Plaintiff would present expert testimony on the damages question, it is possible that, in the inevitable "battle of experts," a jury might disagree with Plaintiff.   In this regard, it is likely that substantial disagreement among experts would exist at trial as to the "fair value" of the stock at each point in time during the Class Period.

Furthermore, the Settlement falls within the range of reasonableness.   Courts agree that determination of a "reasonable" settlement is not susceptible to a single mathematical equation yielding a particularized sum.   Rather, "in any case there is a range of reasonableness with respect to a settlement." *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972); *Fickinger v. C.I. Planning Corp.,* 646 F. Supp. 622; *In re Sensitive Care, Inc.*, 239 B.R. 117, 125 (Bkrtcy. N.D. Tex. 1999)  In *Parker*, where the settlement

amounted to approximately 12% of the potential damages, the Fifth Circuit stated:

> The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved. . . .
> 667 F.2d at 1210 n.6.

In light of the risks of establishing both liability and damages, Plaintiff believes that this Settlement fits well within the range of reasonableness.

While it is certainly possible that the maximum recoverable damages at trial for all claims would exceed the amount of the Settlement, that assumes acceptance of Plaintiff's liability and damage evidence by the jury.   Given the obstacles and uncertainties of continued litigation, Plaintiff submits that the proposed Settlement represents an acceptable recovery in this case, and is unquestionably better than the possible alternative of no recovery at all.  *See, e.g., In re Prudential Sec., Inc. Ltd. P'ships Litig.*, MDL No. 1005, 1995 WL 798907 (S.D.N.Y. 1995) (approving settlement of between 1.6% and 5% of claimed damages); *In re Crazy Eddie Sec. Litig.,* 824 F. Supp. 320 (E.D.N.Y. 1993) (settlement of between 6% and 10% of damages); *In re Michael Milken & Assocs. Sec. Litig.,* 150 F.R.D. 57 (S.D.N.Y. 1993) (7.5%).

In sum, Plaintiff recognizes that, had the case proceeded to trial, it may have been very difficult to recover all or even most of the damages sustained.  Therefore, Plaintiff's counsel believes that the Settlement represents an excellent result for the Class.

**5.     The Complexity, Expense And Likely Duration Of This Litigation**

Another primary reason for counsel to recommend, and the courts to approve, a settlement is the complexity, duration and risks of further litigation.  *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson,* 390 U.S. 414, 424 (1968) (court must consider, *inter alia*, "the complexity, expense, and likely duration of such litigation"); *Manchaca,* 927 F. Supp. at 966; *Transamerican Refining Corp. v. Dravo*

*Corp., et al.*, 952 F.2d 898, 900 (5th Cir. 1992).  Here, several factors are present that make it more likely that, without the Settlement, the case would require additional large expenditures and years of litigation, and there would be a significant risk that the Class would obtain a result far less beneficial that the one provided by the Settlement.

Defendants are represented by extremely capable counsel who are familiar with the defense of complex securities class actions such as this action.  Since the inception of the litigation, Defendants have denied liability and asserted facially reasonable explanations in response to Plaintiff's allegations.

The misconduct alleged involves a substantial number of complex issues.  At the time the Settlement was agreed upon, Defendants had succeeded in dismissing significant portions of Plaintiff's allegations.  Formal discovery was not close to complete. Accordingly, thousands of hours of experienced attorney work remained before this case could be tried.  Discovery would have required that Plaintiff review a voluminous amount of documents, take depositions of the Defendants and numerous fact witnesses, including Defendants' employees as well as third parties.  Additionally, experts would have been designated and expert discovery conducted.  Most likely, Defendants would have filed a motion for summary judgment, which also would have been researched, briefed and argued.

Assuming that Plaintiff was successful in certifying the class, Plaintiff would have been forced to defend the certification on a Rule 23(f) appeal.  In addition, Plaintiff would have been forced to oppose Defendants' inevitable motions for summary judgment.  Also, a pretrial order would have been prepared, proposed jury instructions would have been submitted and motions in limine would have been filed, briefed and argued.  Trial of this action would unquestionably entail several weeks and require the

introduction of hundreds of exhibits dealing with extremely technical aspects of the industry and financial matters, conflicting and extensive expert testimony, the testimony of many fact witnesses, vigorously contested motions and the expenditure of hundreds of thousands of dollars in additional out-of-pocket costs as well as significant judicial resources.

All of the above would undoubtedly have taken well over a year to complete and involved substantial expense that would burden any recovery.  Moreover, even if the Class could eventually recover a larger judgment after trial, given the time value of money, a future recovery in excess of the proposed Settlement may not have been more beneficial than receiving the benefits of the proposed Settlement now at this stage of the case. Additionally, any further trial judgment would still be subject to the continuing risks and vicissitudes of litigation, through possible appeals.  *See, e.g., McNary,* 76 F.R.D. at 650 ("[I]t would be unrealistic not to anticipate appeals from the results reached at trial.").  Even very large judgments, recovered after lengthy litigation and trial, can be completely lost on appeal.[10]

### 6.    The Opinion Of Plaintiff's Counsel And Class Members

As noted above, experienced Plaintiff's Counsel, operating at arm's-length, have concluded that the Settlement is fair, reasonable and adequate.  Here, Plaintiff's Counsel has acquired a thorough understanding of the claims and defenses through independent investigation, informal and formal discovery and the negotiation process, and submit that

---

[10] *See, e.g., Piper v. Chris-Craft Indus.,* 430 U.S. 1 (1977) (reversing Second Circuit's award of damages under Williams Act in amount of $25,793,365 after eight year litigation); *Hughes Tool Co. v. Trans World Airlines, Inc.,* 409 U.S. 363 (1973) (reversing treble damage judgment for over $145,000,000 in action begun in 1961); *Robbins v. Koger Props.,* 116 F.3d 1441 (11th Cir. 1997) (reversing $81 million jury verdict); *Backman v. Polaroid Corp.,* 910 F.2d 10 (1st Cir. 1990) (reversing jury verdict on appeal); *MCI Communications Corp. v. Am. Tel. & Tel. Co.,* 708 F.2d 1081 (7th Cir. 1983); *Berkey Photo, Inc. v. Eastman Kodak Co.,* 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial).

the Settlement is appropriate and should be approved.

The decision to enter into an agreement-in-principle to settle the litigation was made on a fully informed basis by virtue of Plaintiff's Counsel's independent investigation and spirited dialogue with Defendants.  The view of Plaintiff's Counsel, while not conclusive, is "entitled to significant weight."  *Fisher Bros. v. Cambridge-Lee Indus., Inc.,* 630 F. Supp. 482, 488 (E.D. Pa. 1985); *Ahearn v. Fibreboard Corp.,* 162 F.R.D. 505, 528 (E.D. Tex. 1995); *Goldsmith v. Technology Solutions, Co.*, 1995 WL 17009594 at *4 (N.D. Ill. 1995) ("as a result, plaintiffs' counsels' endorsement of this settlement bears particularly significant weight since they are fully informed about the facts of this case, the defenses raised and risks of establishing liability and damages.").

Moreover, support from Class members is unanimous at this time.  Currently, **no objections to the Settlement have been received from any Class Member**.  Nor has any Class Member requested exclusion from the Class.  **The lack of objections argues strongly in favor of the Settlement.**  *See, e.g., In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 526 (E.D. Mich. 2003); *see also City of Detroit v. Grinnell Co.* , 495 F.2d 448, 463 (2d Cir. 1974).

## VI. CONCLUSION

The Settlement is the product of hard-fought litigation and takes into account the specific risks of the case.  Experienced counsel negotiated the Settlement for Plaintiff and Defendants, with a firm understanding of both the strengths and weaknesses of their respective claims and defenses.  This negotiation was the product of nearly three years of litigation.  The result of this hard work is the creation of a Settlement Fund for the Class.  Based on each of the factors discussed above, Plaintiff respectfully requests that the

proposed Class be finally certified as a settlement class, and that the proposed Settlement

be finally approved as fair, reasonable and adequate.


Respectfully submitted,


By:   /s/ Sean F. Rommel_____
Sean F. Rommel
State Bar No. 24011612
**PATTON ROBERTS, PLLC**
2900 St. Michael Drive, Suite 400
P. O. Box 6128 75505
Texarkana, Texas 75503
(903) 334-7000
(903) 334-7007 (facsimile)

**PLAINTIFFS' LIAISON COUNSEL**

**MILBERG WEISS LLP**
Clifford S. Goodstein
One Pennsylvania Plaza
New York, New York 10119
(212) 594-5300
(212) 868-1229 (facsimile)

**NIX, PATTERSON & ROACH, LLP**
Bradley E. Beckworth
205 Linda Drive
P.O. Box 679
Daingerfield, Texas 75638
(903) 645-7333
(903) 645-4415 (facsimile)

**PLAINTIFFS' CO-LEAD COUNSEL**


## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document was served electronically on all counsel who are deemed to have consented to electronic service on this 5th day of February, 2008.

/s/ Sean F. Rommel_____
Sean F. Rommel