# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TEXARKANA DIVISION

| | | |
|---|---|---|
| **TERRY WALKER, Individually and on Behalf of Others Similarly Situated,** | : | |
| | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Case No. 5:02cv3 (DF)** |
| **vs.** | : | |
| | : | |
| **RENT-A-CENTER, INC.,** *et al.*, | : | |

## LEAD PLAINTIFFS' MEMORANDUM IN SUPPORT OF AWARD OF ATTORNEY FEES AND REIMBURSEMENT OF EXPENSES

### I. PRELIMINARY STATEMENT

Lead Plaintiff Elizabeth Bergbower ("Plaintiff"), together with Plaintiff's Co-Lead and Liaison Counsel ("Plaintiff's Counsel"), submits this Memorandum of Law in support of an award of attorney fees and reimbursement of expenses of $1,600,000 ($1.6 million) for Plaintiff's Counsel's efforts in connection with a proposed settlement of this suit.  The settlement consists of a fund consisting of $3.6 million in cash for the benefit of investors (the "Settlement" or the "Settlement Fund") who purchased or otherwise acquired shares of Rent-A-Center, Inc. ("RAC") common stock between April 25, 2001 and October 8, 2001, inclusive, and were damaged thereby (the "Class").[1]

As set forth in detail in the accompanying Declaration in Support of Motion for Approval of the Proposed Settlement and Plan of Allocation and in Support of Application for Attorneys'

---

[1] The terms of the Settlement are contained in the Stipulation and Agreement of Settlement dated October 30, 2007 (the "Stipulation") which was preliminarily approved on October 31, 2007, along with the form of Notice of Pendency of Class Action and Proposed Settlement, Motion for Attorneys' Fees and Settlement Fairness Hearing ("Notice").

Fees and Reimbursement of Expenses (the "Declaration"),[2] this Settlement is the product of hard-fought litigation and takes into account the specific risks of the case. Experienced counsel negotiated the Settlement for Plaintiff and Defendants with a firm understanding of both the strengths and weaknesses of their respective claims and defenses.

A detailed summary of the history of this litigation, including extensive motion practice and discovery along the way toward settlement, is set forth in the Declaration. The Court is well aware of the fact that this case was strongly litigated and heavily briefed, including several motions to dismiss, several detailed amendments to the Complaint and a contested class certification battle. As such, Plaintiff will not repeat the history of this case in this Brief. Instead, Plaintiff respectfully incorporates the Declaration, the Notice, Lead Plaintiff's Memorandum in Support of Approval of Final Settlement and all pleadings on file in this matter herein as if fully set forth in their entirety.

## II. THE REQUESTED FEES SHOULD BE AWARDED BASED ON A PERCENTAGE OF THE RECOVERY OBTAINED

### A.   THE PSLRA RECOGNIZES THE PROPRIETY OF THE PERCENTAGE METHOD

The PSLRA clearly recognizes the propriety of using the percentage method to award attorney's fees in securities fraud cases. *See* 15 U.S.C. § 78u-4(a)(6) ("Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable *percentage* of the amount of any damages and prejudgment interest actually paid to the class.") (emphasis added). The PSLRA's recognition of the propriety of using the percentage method was one reason, among many, why this Court used the percentage method when awarding attorney's fees in *In re Triton Energy Securities Litigation*, Civil Action No. 5:98-CV-256, and

---

[2] The Declaration is incorporated herein.

Judge Heartfield used the same method in *In re UAXS Securities Litigation*, Civil Action No. 9:02-CV-103.

### B.     PLAINTIFFS' COUNSEL ARE ENTITLED TO A FEE FROM THE COMMON FUND

Courts have long recognized that attorneys who represent a class and achieve a benefit for class members are entitled to be compensated for their services, and that where a class plaintiff successfully recovers a fund, the costs of litigation should be spread among the fund's beneficiaries. Under this "equitable" or "common fund" doctrine, established more than a century ago in *Trustees v. Greenough*, 105 U.S. 527 (1882), attorneys who obtain a recovery for a class in the form of a common fund are entitled to an award of fees and expenses from that fund as compensation for their work. *See Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161 (1939); *In re Enron Corp. Sec. Deriv. & ERISA Litig.*, 235 F.Supp.2d 549 (S.D. Tex. 2004) ("*Enron*"). Courts also have recognized that in addition to providing just compensation, awards of attorneys fees from a common fund also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature. *See, e.g., Dolgow v. Anderson*, 43 F.R.D. 472, 481-84 (E.D.N.Y. 1968) (Weinstein, C.J.). Indeed, the Supreme Court has emphasized that private securities actions, such as the instant action, provide a "most effective weapon in the enforcement of the securities laws" and are "a necessary supplement to [SEC] action." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (*quoting J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964), *Enron*, 235 F.Supp.2d at 594.

### C.   FEES IN COMMON FUND CASES SHOULD BE BASED ON A PERCENTAGE OF THE RECOVERY

Although the Fifth Circuit has not expressly decided the issue, the United States Supreme Court, as well as numerous courts of appeal and the overwhelming weight of authority from this District and other districts within the Fifth Circuit, all support the view that fees in common fund cases should be awarded based on a percentage of the recovery obtained.

### 1.   The Supreme Court Has Repeatedly Held That Fees In Common Fund Cases Are Properly Calculated On A Percentage Of The Recovery

The Supreme Court consistently has held that where a common fund has been created for the benefit of a class as a result of counsel's efforts, the award of counsel's fee should be determined on a percentage-of-the-fund basis. *See, e.g., Greenough*, 105 U.S. at 532; *Central RR & Banking Co. v. Pettus*, 113 U.S. 116, 124-25 (1885); *Sprague*, 307 U.S. at 166-67; *Boeing Co.*, 444 U.S. at 478-79; *Batchelder v. Kerr-McGee Corp.*, 246 F. Supp. 2d 525, 531 (N.D. Miss. 2003) ("*Batchelder*"). Indeed, by 1984 this point was so well established that the Supreme Court needed no more than a footnote to make it in *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). ("Under the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class."); *see also Report of the Third Circuit Task Force, Court Awarded Attorney Fees*, 108 F.R.D. 237, 242 (October 8, 1985) (hereinafter the "*Task Force Report*") (fee awards in common fund cases have historically been computed based upon a percentage of the fund); 1 Alba Conte, *Attorney Fee Awards* §2.02, at 31-32 (2d ed. 1993) (same). The percentage concept is intended to approximate the market by basing the fee award on what private counsel ordinarily would charge in a contingent fee contract. *See In re Cont'l Ill. Sec. Litig.*, 962 F. 2d 566, 572 (7th Cir. 1992) ("The class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis with a similar outcome, for a paying

client."); *see also Camp v. Progressive Corp.,* 2004 WL 2149079 at *19 n.10 (E.D. La. 2004) ("*Camp*").

Despite Supreme Court precedent approving percentage fees in common fund cases, a number of years ago some lower federal courts began employing an alternative method for calculating fee awards known as the "lodestar/multiplier" method. The lodestar approach entails two steps.  First, to determine the lodestar, the court multiplies the number of hours spent on the case by each attorney's reasonable hourly rate. Second, the court adjusts that figure (by applying a multiplier) to reflect such factors as the risk, the contingent nature of the litigation, the result obtained, and the quality of the attorneys' work.  *See, e.g., Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167-69 (3d Cir. 1973) ("*Lindy I*"), subsequently refined in *Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 116-18 (3d Cir. 1976) (*en banc*) ("*Lindy II*").

However, the Supreme Court has *never* adopted the lodestar method in a common fund case.  *See Shaw*, 91 F.Supp.2d at 963 (citing Manual for Complex Litigation (3d ed.) § 24.12 at p. 189) (1995); *see also In re Prudential- Bache Energy Income P'ships Sec. Litig.*, No. MDL 888, 1994 WL 150742, at *3 (E.D. La. Apr. 13, 1994) ("Prudential I"); *In re Catfish Antitrust Litig.*, 939 F.Supp. 493, 500 (N.D. Miss. 1996) ("Indeed, every 'common fund' case to come before the Supreme Court utilized a percentage approach, and when given the opportunity, the court declined to adopt the lodestar method in the common fund context"); *Venegas v. Mitchell*, 495 U.S. 82 (1990) (holding that a plaintiff in a civil rights suit may be contractually bound to pay an

attorney a percentage of the recovery even though the fee exceeds the statutory fee that the defendant must pay to the plaintiff).

Moreover, in the wake of the Supreme Court's decisions in *Boeing* (1980) and *Blum* (1984), which reaffirmed the appropriateness of the percentage method in common fund cases, in 1984, Chief Judge Aldisert of the Third Circuit (the author of *Lindy II*) convened a task force of prominent judges and practitioners to reconsider *Lindy II* because "a number of difficulties [had] been encountered in applying the [lodestar method]." *Task Force Report,* 108 F.R.D. at 238. The Task Force, spearheaded by Prof. Arthur Miller of Harvard Law School, identified at least nine perceived deficiencies of the *Lindy II* "lodestar" approach, and found that there was a "widespread belief" that these deficiencies "either offset or exceed [the] benefits" of the lodestar method. *Id.* at 246. Accordingly, the Task Force concluded that although *Lindy II* continued to have merit in *statutory fee-shifting cases*, and should be followed in such cases, fee awards in *common fund cases* should be based on a percentage of recovery. *Id.* at 254-59.

Indeed, even in cases where a class action is brought under a true federal fee shifting statue, such as the Magnuson-Moss Warranty Act or the Truth In Lending Act, when a class action settlement results in the creation of a common settlement fund for the benefit of all Class Members, the fee-shifting statute no longer applies. *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 255 (7th Cir. 1988), *cert. denied*, 493 U.S. 810 (1989).

Thus, the law is clear that the lodestar approach does not even apply when the claims are brought under a federal statute that has an express lodestar requirement for the determination of attorney's fees when the settlement results in the creation of a common fund. In the present case, a cash fund has been created. More importantly, the federal statute under which Plaintiffs asserted their claims—the PSLRA—does not include a fee shifting or lodestar requirement. Because the case law is clear that a lodestar analysis is not proper when a common fund is created by a class action settlement under a lodestar federal statute such as the Truth in Lending Act or the Magnuson-Moss Warranty Act, then certainly no lodestar analysis is required under a

federal statute such as the PSLRA where Congress expressly chose not to include a lodestar requirement.

### 2. The Clear Majority Of Courts Of Appeal Have Approved The Percentage Method

Since the issuance of the Task Force Report in 1985, virtually every circuit court has joined the United States Supreme Court in approving use of the percentage-of-the-fund method in common fund cases. *See, e.g., In re Thirteen Appeals Arising Out of the San Juan DuPont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995); *WalMart Stores, Inc. v. VISA U.S.A., Inc.,* 396 F.3d 96, 121 (2d Cir. 2005); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821-22 (3rd Cir. 1995); *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 515-17 (6th Cir. 1993); *Florin v. Nationsbank, N.A.*, 34 F.3d 560, 56465 (7th Cir. 1994); *Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241, 246 (8th Cir. 1996); *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir. 1994); *Gottlieb v. Barry*, 43 F.3d 474, 487 (10th Cir. 1994) (authorizing percentage approach and holding that use of lodestar/multiplier method was abuse of discretion); *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("After reviewing *Blum*, the [3d Circuit] Task Force Report, and cases from other circuits, we believe that the percentage of the fund approach is the better reasoned in a common fund case," and mandating *exclusive* use of the percentage approach in future common fund cases); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993) (percentage of the fund recovered is the *only* permissible measure of awarding fees in common fund cases); *see also Gwozdzinsky v. Sandler*, No. 95 Civ. 1400 (SHS), 1997 U.S. Dist. LEXIS 23710 (S.D.N.Y. Feb. 11, 1997) (awarding fees on a percentage basis), *aff'd*, 159 F.3d 1346 (2d Cir. 1998).

As these and many other courts have noted, the percentage method directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient

prosecution and early resolution of litigation, thereby benefiting both litigants and the judicial system. For example, in *Kirchoff v. Flynn*, 786 F.2d 320, 325 (7th Cir. 1986), the Seventh Circuit succinctly summarized some of the benefits of the percentage method:

> The contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client. The lawyer gains only to the extent his client gains. . . .  The unscrupulous lawyer paid by the hour may be willing to settle for a lower recovery coupled with a payment for more hours. Contingent fees eliminate this incentive and also ensure a reasonable proportion between the recovery and the fees assessed to defendants.

Conversely, numerous courts have criticized the competing lodestar method for encouraging plaintiffs' attorneys to needlessly drag out complex litigations for months or years in order to run up "lodestar" hours, even when their clients' and the class' interests would be much better served by an earlier, more efficient, settlement of a case based on arm's-length negotiations conducted by experienced counsel. *See, e.g., Shaw*, 91 F.Supp.2d at 964 ("Simply put, the lodestar method encourages class-action attorneys to drag their feet to the detriment of their respective classes."); *In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1296, 1305 (E.D.N.Y. 1985) (Weinstein, C.J.) *aff'd in part and rev'd in part*, 818 F.2d 226 (2d Cir. 1987) (criticizing lodestar approach as one that "tends to encourage excess discovery, delays and late settlements, while it discourages rapid, efficient and cheaper resolution of litigation"); *In re Gen. Motors*, 55 F.3d at 821 (noting that lodestar method has been criticized for giving plaintiff's counsel "the incentive to delay settlement in order to run up fees"); *Thirteen Appeals*, 56 F.3d at 307 (lodestar method creates "a disincentive for the early settlement of cases").

The percentage approach also is the most efficient means of rewarding the work of class action attorneys because it avoids the wasteful and burdensome process of preparing and evaluating fee petitions, which the Third Circuit Task Force has described as "cumbersome, enervating, and often surrealistic." *Task Force Report*, 108 F.R.D. at 258; *see also Shaw*, 91 F. Supp. 2d at 964 ("The lodestar method voraciously consumes enormous judicial resources,

unnecessarily complicates already complex litigation, and inaccurately reflects the value of services performed"); *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (warning that a "request for attorney's fees should not result in a second major litigation").

One of the nation's foremost scholars in the field of class actions and attorneys fees, Prof. Charles Silver of the University of Texas School of Law, also has concluded that -- among its many other benefits -- the contingent percentage method is also far superior to the lodestar method in aligning the interests of class counsel with the interests of absent class members. Indeed, as Prof. Silver wrote in an article published in June of 2000:

> *The consensus that the contingent percentage approach creates a closer harmony of interests between class counsel and absent plaintiffs than the lodestar method is strikingly broad.* It includes leading academics, researchers at the RAND Institute for Civil Justice, and many judges, including those who contributed to the Manual for Complex Litigation and the report of the Third Circuit Task Force. Indeed, it is difficult to find anyone who contends otherwise. No one writing in the field today is defending the lodestar on the ground that it minimizes conflict between class counsel and absent claimants…*In view of this, it is as clear as it possibly can be that judges should not apply the lodestar method in common fund cases*. The Due Process Clause requires them to minimize conflicts between absent claimants and their representatives. The contingent percentage approach accomplishes this.

Prof. Charles Silver, *Class Actions In The Gulf South Symposium: Due Process and the Lodestar Method: You Can't Get From Here To There*, 74 Tul. L. Rev. 1809, 1819 (June 2000) (emphasis added).[3]

Significantly, the percentage method also is consistent with -- and indeed is intended to mirror -- practice in the private marketplace where contingent fee attorneys typically negotiate

---

[3] Similarly, one of the country's leading securities law scholars has argued that a percentage of the gross recovery is the only reasonable method of awarding fees in common fund cases:

> If one wishes to economize on the judicial time that is today invested in monitoring class and derivative litigation, the highest priority should be given to those reforms that restrict collusion and are essentially self-policing.  The percentage of the recovery fee award formula is such a "deregulatory" reform because it relies on incentives rather than costly monitoring. Ultimately, this "deregulatory" approach is the only alternative . . . .

Prof. John C. Coffee, Jr., *Understanding the Plaintiff's Attorney: The Implications of Economic Theory for Private Enforcement of the Law through Class and Derivative Actions*, 86 Column. L. Rev. 669, 724-25 (1986).

percentage fee arrangements with their clients. *See Camp,* 2004 WL 2149079 at *19 n.10; *see also Prudential I*, 1994 WL 150742 at *2; *In re Cont'l Ill. Sec. Litig.*, 962 F.2d at 568 (explaining that the goal of the fee setting process "is to determine what the lawyer would receive if he were selling his services in the market, rather than being paid by court order"); *Swedish Hosp.*, 1 F.3d at 1270 (percentage method "more clearly reflects the marketplace"); *see also In re RJR Nabisco Inc. Sec. Litig.*, [1992 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶96,984 at 94,268 (S.D.N.Y. Aug. 24, 1992) ("What should govern such awards is not the essentially whimsical view of a judge, or even a panel of judges, as to how much is enough in a particular case, but what the market pays in similar cases."); *Kirchoff*, 786 F.2d at 324 ("When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee *is* the 'market rate.'") (emphasis in original).

In sum, as the District of Columbia Circuit has stated in holding that the percentage method is the *only* appropriate method in common fund cases:

> [A] percentage-of-the-fund approach is less demanding of scarce judicial resources than the lodestar method. The lodestar method makes considerable demands upon judicial resources since it can be exceptionally difficult for a court to review attorney billing information over the life of complex litigation and make a determination about whether the time devoted to the litigation was necessary or reasonable. This Court has reiterated the Supreme Court's warning that "[a] request for attorney's fees should not result in a second major litigation." . . . . We adopt a percentage-of-the-fund methodology . . . because it is more efficient, easier to administer, and more closely reflects the marketplace.

*Swedish Hosp.* 1 F.3d at 1269-70.

### 3.      This Court, As Well As Numerous Other District Courts In This Circuit, Have Used The Percentage Method To Determine Reasonable Attorneys' Fees

Anticipating the trend away from the lodestar method, Judge Vance of the Fifth Circuit stated in his separate opinion in *Foster v. Boise-Cascade, Inc.*, 577 F.2d 335, 337 n.1 (5th Cir. 1978):

> [I]f mechanically applied, the hourly rate approach almost inevitably leads to an unsatisfactory result in this type of litigation. This method of compensation – which equates professional services to those of laborers and mechanics – frequently has little or no relationship to the value of the services performed in anything but the most routine work.  A flash of brilliance by a trial lawyer may be worth far more to his clients than hours or days of plodding effort. Few among us would contend that an operation by a gifted surgeon who removes an appendix in fifteen minutes is worth only one-sixth that performed by his marginal colleague who requires an hour and a half for the same operation.

Notwithstanding Judge Vance's insight and the manifest advantages of the percentage fee method over the lodestar method, the Fifth Circuit has not yet explicitly determined which method should apply in common fund cases. *See, e.g., Faircloth v. Certified Fin., Inc.*, 2001 WL 527489, *7 (E.D. La. 2001) ("despite the apparent advantages of the percentage fee method over the lodestar method in common fee cases, the law in the Fifth Circuit concerning which method should be applied is 'at best unclear'"). In the statutory fee (as opposed to common fund) context, the Fifth Circuit has endorsed the lodestar approach, and has articulated twelve factors to be considered in determining what multiplier or other adjustment should be applied to the lodestar to obtain a final fee determination. *See Johnson v. Georgia Highway Express, Inc*., 488 F. 2d 714 (5th Cir. 1974). The *Johnson* factors are: (1) time and labor required; (2) novelty or difficulty of the issues; (3) skill required to perform the legal services properly; (4) preclusion of other employment; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) amount involved and results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id*. at 717-19.

In contrast, in *Longden v. Sunderman*, 979 F.2d 1095 (5th Cir. 1992), the Fifth Circuit affirmed the district court's percentage fee award in a securities class action, and noted in passing that the district court had stated its preference for the percentage-of-recovery method "as

11

a matter of policy" in common fund cases. *Id.* at 1100, n.ll. And although the Fifth Circuit recently confirmed that the lodestar method and application of the *Johnson* factors remains appropriate in some cases, it was careful to expressly reserve the question of whether the percentage method applies in the common fund context. *Strong v. BellSouth Telecoms, Inc.*, 137 F. 3d 844, 852 (5th Cir. 1998) (holding that the Supreme Court's decision in *Boeing*, which applied the percentage-of-the-fund method, was distinguishable because the settlement at issue -- unlike *Boeing* -- did not involve a traditional common fund); *see also Faircloth,* 2001 WL 527489 at *7. Indeed, at least one lower court has read *Strong* as foreshadowing the Fifth Circuit's formal joinder in the Supreme Court-led trend towards use of the percentage method in common fund cases:

> Clearly . . . the Fifth Circuit recognizes the propriety of the percentage fee method where each member of the class has an "undisputed and mathematically ascertainable claim to part of [a] lump-sum judgment." *See [Strong]* at 852 (quoting *Boeing*, 444 U.S. at 479, 100 S. Ct. at 748). *In re Harrah's Entm't, Inc. Sec. Litig.*, C.A. No. 95-3925, 1998 U.S. Dist. LEXIS 18774 (E.D. La. Nov. 25, 1998) (awarding percentage fee); *see also Shaw*, 91 F. Supp.2d at 967 ("In *Strong*, the Fifth Circuit highlighted the difference between the common fund class action and other class actions").

Moreover, as several other district courts within this circuit have noted, "since *Blum* was decided [in 1984], there has been no Fifth Circuit decision that would preclude this Court from employing the percentage-of-the-fund approach endorsed in *Blum* and the circuit and district court decisions that followed and applied *Blum*." *Prudential 1*, 1994 WL 150742, at *4 (contained in the Joint Appendix); *see also Shaw*, 91 F. Supp. 2d at 967, n. 15 ("The Fifth Circuit has *never* reversed a district court judge's decision to award a fee as a percentage") (emphasis in original); *Longden*, 979 F. 2d at 1100 & n.11 (affirming district court's percentage fee award in securities class action); *see also Faircloth*, 2001 WL 527489 at *6 ("[N]umerous courts in this circuit have simply applied the percentage fee method in common fund cases.").

Accordingly, numerous district courts within the Fifth Circuit have applied the percentage-of-recovery method in awarding fees.  For example, the published opinions in *In re Catfish Antitrust Litig.*, 939 F. Supp. 493, 500 (N.D. Miss. 1996) and *Shaw*, 91 F. Supp. 2d at 966-67, list the following class action cases as examples:

1)   *Orzel v. Gilliam*, Case No. 3:90-CV-0044-G (N.D. Tex. May 16, 1995) (Judge Fish);

2)   *In re Prudential-Bache Energy Income P'ships Sec. Litig.*, No. 888, 1994 WL 202394, at *1 (E.D. La. May 18, 1994) ("*Prudential II*") (Judge Livaudais);

3)   *Steiner v. Phillips*, Consolidated Civ. Act. No. 3:89-1387-X (N.D. Tex. Mar. 14, 1994)  (Judge Kendall);

4)   *In re Shell Oil Ref.*, 155 F.R.D. 552 (E.D. La. 1993) (Judge Mentz);

5)   *Belman v. Warrington*, Civ. Act. No. H-91-3767 (S.D. Tex. Nov. 16, 1993) (Judge Hoyt);

6)   *In re Intellicall Sec. Litig.*, Master File No. 3:91-CV-0730-P (N.D. Tex. Sept. 22, 1993)  (Judge Solis);

7)   *Kleinman v. Harris*, Civ. Act. No. 3:89-CV-1869-X (N.D. Tex. June 21, 1993) (Judge Kendall);

8)   *In re First Republic Bank Sec. Litig.*, Civ. Act. No. CA3-88-0641-H (N.D. Tex. Feb. 28, 1992 and Mar. 8, 1993) (Judge Sanders);

9)   *Transamerican Ref. Corp. v. Dravo Corp.*, Civ. Act. No. H-88-789 (S.D. Tex. Nov. 16, 1992) (Judge Black);

10)   *In re Granada P'ships Sec. Litig.*, No. H-90-0214 (S.D. Tex. Oct. 19, 1992) (Judge Harmon);

11)   *In re Lomas Fin. Corp. Sec. Litig.*, Civ. Act. No. CA-3-89-1962-G (N.D. Tex. Jan. 28, 1992) (Judge Fish);

12)   *In re Middle S. Util. Sec. Litig.*, No. 85-3681, 1991 U.S. Dist. LEXIS 18062 (E.D. La. Dec. 17, 1991) (Judge Duplantier);

13)   *Rywell v. Healthvest*, CA No. 3-89-2394-H (N.D. Tex. Dec. 3, 1991) (Judge Sanders);

14)   *Longden v. Sunderman*, Civ. Act. No. 3-87-0612-H (N.D. Tex. May 1, 1991) (Judge Sanders), *aff'd*, 979 F.2d 1095 (5th Cir. 1992);

15)   *Teichler v. DSC Communications Corp.*, CA3-85-2005-T (N.D. Tex. Oct. 22, 1990)  (Judge Maloney);

16)   *Finkel v. Docutel/Olivetti Corp.*, Civ. Act. No. CA3-84-0566-T (N.D. Tex. Feb. 23, 1990) (Judge Maloney);

17)   *Gonzalez v. Crown Life Ins. Co.*, C.A. No. M-97-156 (S.D. Tex. 1997) (Judge Lake); and

18)   *Metzgar v. The Equitable Life Assurance Soc.*, C.A. No. CA4-82-413-K (N.D. Tex. 1988) (Judge McBryde).

Other district courts in this Circuit that have used the percentage method and that are not cited in *Catfish* or *Shaw* include:

19) *Bassman, et al. v. Union Pacific Corp.*, No. 3:97-CV-2819-L (N.D. Tx. Dec. 13, 2000), (Judge Lindsay);

20) *Branca, et al. v. Paymentech, Inc., et al.*, No. 3:97-CV-2507-L (N.D. Tx. Jan. 4, 2001), (Judge Lindsay);

21) *Gracy Fund, L.P., et al. v. EEX Corp. Ensearch Corp., et al.*, No. 3:98-CV-1808-M (N.D. Tx. Dec. 28, 2000);

22) *Segil v. Dynamex, Inc.*, No. 3:98-CV-2593 (N.D. Tx. June 29, 2001) (Judge Sanders);

23) *Kisilenko v. STB Sys., Inc.*, No. 3:99-CV-2872-M (N.D. Tex. Nov. 3, 2000);

24) *Neibert v. Monarch Dental Corp.*, No. 3:99-CV-762-X (N.D. Tex. Jun. 19, 2000) (Judge Kendall);

25) *Robertson v. Strassner*, No. H-98-0364 (S.D. Tex. Jan. 5, 2000) (Judge Atlas);

26) *In re Combustion, Inc.,* 968 F. Supp. 1116, 1142-43 (W.D. La. 1997) (Judge Haik);

27) *In re ProNet, Inc. 1933 Act Sec. Litig.*, Master File No. 3:96-CV-1795-P (N.D. Tex. Nov.    9, 1997) (Judge Solis);

28) *In re Olicom Sec. Litig.*, Master File No. 3:94-CV-0511-D (N.D. Tex. Aug. 30, 1996)  (Judge Fitzwater);

29) *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403 (S.D. Tex. 1999) (Judge Jack);

30) *Sims v. Shearson Lehman Bros., Inc.*, [1993-1994 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶98,134, at 98,976 (N.D. Tex. Nov. 29, 1993) (Judge Kendall);

31) *Courtney v. Am. Airlines, Inc.*, No. 4:97-CV-668-A (N.D. Tex. Sept. 3, 1999) (Judge McBryde);

32) *In re Harrah's Entm't, Inc. Sec. Litig.*, No. 95-3925, 1998 U.S. Dist. LEXIS 18774, (E.D. La. Nov. 25, 1998) (Judge Clement);

33) *In re Tenneco Inc. Sec. Litig.*, C.A. No. H-91-2010 (S.D. Tex. June 19, 1992) (cited in *Prudential I*, at *4);

34) *In re Triton Energy Securities Litigation*, Civil Action No. 5:98-CV256 (E.D. Tex.) (Judge Folsom); and

35) *In re UAXS Securities Litigation*, Civil Action No. 9:02-CV-103 (E.D. Tex.).

These decisions are in accord with the trend in other district courts in favor of the percentage-of-recovery approach. For example, in *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160 (S.D.N.Y. 1989), former Chief Judge Brieant of the Southern District of New York stated that: [A percentage fee] award is consistent with the new learning (old wine in a new bottle) announced by the Ninth Circuit in *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989), which new learning we believe will proceed from West to East and take us back to straight contingent fee awards bereft of largely judgmental and time-wasting computations of lodestars and multipliers. These latter computations, no matter how conscientious, often seem to take on the character of so much Mumbo Jumbo. They do not

14

guarantee a more fair result or a more expeditious disposition of litigation. *Id.* at 170; *see also Shaw*, 91 F.Supp.2d at 962-63; *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 691 (M.D. Ala. 1988) ("Since the Supreme Court's decision in *Blum* that common fund fee awards are to be computed as a fair percentage of the fund, courts increasingly have begun to shy away from the *Lindy* and *Johnson* approaches and have returned to the percentage of the fund method.").

In sum, there is a strong consensus -- both in this District, this Circuit and across the country -- in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery. For all of the reasons previously accepted by courts in this District and elsewhere, the percentage method should be applied in this common fund case.

### 4.   The Requested Percentage Is Fair And Reasonable And Is Consistent With Fee Awards In Comparable Cases From This District

The requested fee award of approximately 30% of the Settlement Fund is consistent with awards made in similar cases. *See, e.g., Shaw*, 91 F. Supp. 2d at 972 ("based on the opinions of other courts and the available studies of class action attorney's fee awards (such as the NERA study), this court concludes that attorney's fees in the range from twenty-five percent (25%) to [33 1/3%] have been routinely awarded in class actions"); *Purdie v. Ace Cash Express, Inc.,* 2003 WL 22976611 at *9 (N.D. Tex. 2003) ("*Purdie*") ("In class action lawsuits, courts often . . . award attorney's fees in the range from [25%] to 33.3%."); *Prudential I*, 1994 WL 150742 at *1 (same); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (approving 30% benchmark); *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 749-50 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ("Traditionally, courts in this Circuit and elsewhere have awarded fees in the 20% - 50% range in class actions.") (citing numerous cases); *see also* Denise Martin, et al., Nat'l Econ. Research Ass'n ("NERA"), *Recent Trends IV: What Explains Filings and Settlements in Shareholder Class Actions?* at 13 (1996) ("regardless of case size, fees

average approximately 32 percent of the settlement. This finding holds even for cases with settlement in excess of $50 million.").

In *STB Sys., Inc.*, the Northern District recently recognized that a 30% fee award was appropriate in a securities fraud action that resulted in an expeditious recovery for the class. In addition to *STB*, fees of 30% or more of the total recovery have been awarded under the percentage of the recovery method by *at least* the following courts in this Circuit in common fund cases. *Branca, et al. v. Paymentech, Inc., et al.* (Judge Lindsay) (approving fee of 1/3 of total settlement); *Gracy Fund, L.P., et al. v. EEX Corp. Ensearch Corp., et al.* (approving fee of 30% of settlement); *In re Intellicall Sec. Litig.* (Judge Solis) (approving fee of 30% of settlement in securities case); *In re Combustion, Inc.*, 968 F. Supp. at 1156 (Judge Haik) (approving fees of 36% of $127 million settlement); *In re Olicom Sec. Litig.* (Judge Fitzwater) (approving 33 1/3% fee); *Belman* (Judge Hoyt) (approving fees representing 33% of the settlement fund in securities case); *Sims v. Shearson Lehman Bros., Inc.*, [1993-1994 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶98,134 at 98,976 (Judge Kendall) (approving fees of 33-1/3% of $30 million settlement in securities case); *In re Lomas* (Judge Fish) (approving fee of almost one-third of $20 million settlement); *Kleinman* (Judge Kendall) (one-third fee awarded in securities case); *Finkel* (Judge Maloney) (awarding fees amounting to 33% of settlement fund in securities case); *Teichler* (Judge Maloney) (awarding 33-1/3% of $30 million settlement in securities case); *Faircloth*, 2001 WL 527489 at *8 (awarding 35% attorney's fees).

### 5.    The Requested Fees Are Consistent with Contingent Fee Arrangements Negotiated In Non-Class Litigation

As noted above, the percentage method is consistent with, and is intended to mirror, the private marketplace for negotiated contingent fee arrangements. *Camp*, 2004 WL 2149079 at *19 n.10; *see also Kirchoff*, 786 F.2d at 324 ("When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee *is* the 'market rate.'").

In non-class litigation, 40% contingency fees are typical. As Justices Brennan and Marshall observed in their concurring opinion in *Blum* over 20 years ago: "In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery." 465 U.S. at 902 n.19; *see also Prudential II*, 1994 WL 202394, at *1 ("Were this not a class action, attorney's fees would range between 30% and 40%, the percentages commonly contracted for in contingency cases."); *Phemister v. Harcourt Brace Jovanovich, Inc.*, 1984-2 Trade Cas. (CCH) ¶66,234, at 66,995 (N.D. Ill. 1984) ("The percentages agreed on [in non-class action damage lawsuits] vary, with one-third (1/3) being particularly common.").

Highly sophisticated clients have also agreed to pay large, even extraordinary, contingent fees based on the results achieved. For example, Vinson & Elkins prosecuted the case of *ETSI Pipeline Project v. Burlington Northern, Inc.*, Civ. Act. No. B-84-797-CA, 1989 U.S. Dist. LEXIS 18796 (E.D. Tex. June 6, 1989), on a one-third contingent-fee basis. After obtaining a $1 *billion* verdict at trial and subsequently settling the case for $635 million, Vinson & Elkins realized a fee of approximately $212 million. A senior Vinson & Elkins partner later testified with respect to that fee agreement: "Absent a willingness to pay on a current basis, it is my belief that a client with a claim such as the one we prosecuted would be required to offer a significant percentage of the recovery to his counsel in order to obtain representation." *Declaration of Harry Reasoner*, dated Nov. 30, 1990, at ¶5; *see also id.* at ¶ 6 (market rate for undertaking a major fraud case on a contingent basis is "25% - 35% of the recovery").

### III. THE REASONABLENESS OF THE PERCENTAGE FEE REQUESTED IS CONFIRMED BY THE "HYBRID" PERCENTAGE/*JOHNSON* ANALYSIS

As noted above, the percentage-of-recovery method is generally favored in common fund cases, and Plaintiff's Counsel submit that it is the appropriate method to determine their fee in this case. A lodestar analysis also may be used, however, as a cross-check to assure that

percentage awarded, under the facts of the case, does not create an unreasonable fee. *See, e.g., In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283 (3d Cir. 1998) ("[w]e recognize the lodestar calculation in this case was solely intended as a cross-check of the court's primary fee calculation using the percentage-of-recovery methodology"); *In re Gen. Motors*, 55 F.3d at 821, n.40 (3d Cir. 1995); *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 444 (S.D. Tex. 1999). In this regard, some district courts within the Fifth Circuit have applied a hybrid approach in analyzing the fairness and reasonableness of requested fees. These courts have used the percentage method to set a "benchmark" percentage fee, and then adjusted that fee up or down based on the previously discussed "*Johnson* factors." *See In re Harrah's*, 1998 U.S. Dist. LEXIS 18774, at *20 (applying percentage benchmark and then adjusting the percentage upward slightly based on the *Johnson* factors, including "the skill of counsel in negotiating a speedy and fair settlement"); *see also Shaw*, 91 F. Supp. 2d at 967-68. As shown below, application of the *Johnson* factors as a cross-check amply supports the fairness and reasonableness of the percentage fee requested.

### A.    Thirty Percent (30%) Is An Appropriate  Benchmark In Post-PSLRA Securities Class Actions

As discussed in the preceding section, percentage fees of 30-33 1/2% or more have regularly been awarded by district courts within the Fifth Circuit in post-PSLRA securities cases. Thus Plaintiff's Counsel's request of 30.55% is clearly reasonable. Indeed, fees in the range of 25% to 33 1/3% had already become common in securities cases filed prior to December 1995, when the PSLRA -- and its numerous "pro-defendant" provisions -- became effective. Given that the PSLRA has increased the risk of dismissal and made it harder to recover damages even if a case proceeds to summary judgment or trial, a 33 1/3% benchmark is clearly reasonable in securities cases (such as this action) brought in the post-PSLRA period.

**B.    The Requested Percentage Fee is Fair and Reasonable  Based Upon An Analysis of the *Johnson* Factors**

As noted earlier, the twelve *Johnson* factors are:

(1) The time and labor required....

(2) The novelty and difficulty of the questions...

(3) The skill requisite to perform the legal service properly....

(4) The preclusion of other employment by the attorney due to acceptance of the case....

(5) The customary fee [for similar work in the community]...

(6) Whether the fee is fixed or contingent....

(7) Time limitations imposed by the client or the circumstances....

(8) The amount involved and the results obtained....

(9) The experience, reputation, and ability of the attorneys....

(10) The "undesirability" of the case...

(11) The nature and length of the professional relationship with the client....[and]

(12) Awards in similar cases.

488 F.2d at 717-19. The relevance of each of the *Johnson* factors will vary in any particular case, and, rather than requiring a rigid application of each factor, the Fifth Circuit has left it to the lower court's discretion to apply those factors in view of the circumstances of a particular case. *Brantley v. Surles*, 804 F.2d 321, 325-26 (5th Cir. 1986); *Catfish*, 939 F. Supp. at 502 ("not every [Johnson] factor need be necessarily considered."); *Green v. Admin. of Tulane Educ. Fund*, 284 F.3d 642, 663 (5th Cir. 2002) (district court's application of *Johnson* factors is reviewed on an "abuse of discretion" standard).[4]

---

[4] As stated previously, Plaintiff and Plaintiff's Counsel have provided a detailed summary of the history of this litigation, including extensive motion practice and discovery along the way toward settlement in the Declaration.  As

## IV. THE REACTION OF THE CLASS CONFIRMS THAT THE REQUESTED FEE IS REASONABLE

The Settlement Notice was mailed to more than 18,000 potential Class Members.  This notice advised them that Counsel would apply for a fee award of up to one-third of the Settlement Fund and that Class Members could object to the fee application. **The objection deadline has passed with no objections being filed**. The lack of any objections is itself important evidence that the requested fees are fair. *See, e.g., Ressler v. Jacobson*, 149 F.R.D. 651, 656 (M.D. Fla. 1992) (noting that the lack of objections is "strong evidence of the propriety and acceptability" of fee request); *In re SmithKline Beckman Corp. Sec. Litig*., 751 F. Supp. 525, 533 (E.D. Pa. 1990); *Mashburn*, 684 F. Supp. at 695.

## V. IMPORTANT PUBLIC POLICY CONSIDERATIONS ALSO SUPPORT THE REQUESTED AWARD OF FEES

The federal securities laws are remedial in nature and, in order to effectuate their purpose of protecting investors in private lawsuits, are to be encouraged. *See Basic Inc. v. Levinson*, 485 U.S. 224 (1988); *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299; *Herman & MacLean v. Huddleston*, 459 U.S. 375 (1983); *see also In re WorldCom, Inc. Sec. Litig.,* 308 F.Supp.2d 236, 242 n.9 (S.D.N.Y. 2004). Indeed, the ultimate effectiveness of these remedies may largely depend on the efficacy of the class action device. 3 Louis Loss, *Securities Regulation* 1819 (2d ed. 1961).  As one court has noted:

> Private lawsuits serve to further the objective of the federal securities laws which is to protect investors and consumers against fraudulent and other deceptive practices. As a practical matter, those lawsuits can be maintained only if competent counsel can be obtained to prosecute them. Competent counsel can be obtained if reasonable and adequate compensation for their services were awarded if a successful result is achieved. "To make certain that the public is represented

---

such, Plaintiff will not repeat the history of this.  Instead, Plaintiff respectfully incorporates the Declaration, the Notice and all pleadings on file in this matter herein as if fully set forth in their entirety.   The Declaration clearly supports the award of a 30.55 % fee in the case under the *Johnson* factors.

by talented and experienced trial counsel, the remuneration should be both fair and rewarding. The concept of a private attorney acting as a 'private attorney general' is vital to the continued enforcement and effectiveness of the Securities Acts."

*Eltman v. Grandma Lee's, Inc.*, [1986-1987 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 92,798, at 93,907 (E.D.N.Y. May 26, 1986) (citations omitted); *see also Ressler*, 149 F.R.D. at 657 ("attorneys who bring class actions . . . are vital to the enforcement of the securities laws"); *Warner Communications*, 618 F. Supp. at 750-51 ("Fair awards in cases such as this encourage and support other prosecutions, and thereby forward the cause of securities law enforcement and compliance."). Similarly, in *Prudential II*, the court noted:

> In complex securities class actions and shareholder derivative litigation, able counsel for plaintiffs can be retained only on a contingent basis. A large segment of the investing public would be denied a remedy for violations of the securities laws and breaches of fiduciary duty by public companies and those entrusted with their stewardship if contingent fees awarded by the courts did not fairly and adequately compensate counsel for the services provided, the serious risks undertaken and the delay before any compensation is received. Filing of contingent lawsuits in this connection should not be chilled by the imposition of fee awards which fail to adequately compensate counsel for the risks of pursuing such litigation and the benefits which would not otherwise have been achieved but for their persistent and diligent efforts.

*Prudential II*, 1994 WL 202394, at *8.

Retired Judge Sofaer has also succinctly stated the reasons for providing a substantial financial incentive for capable counsel in securities class actions:

> It unquestionably is true that without able lawyers handling these matters not only do some of them go unprosecuted, but the big difference in my experience is in the amount obtained, and you don't get the highest recovery when you are paying at the low end of the scale of fee recovery in contingent actions. It seems to me that I as the protector of the class can fairly say, and honestly say, that I believe it is in the class's best interests – of this class and of future classes yet unknown – to pay this kind of money for these kinds of benefits.

*Conte, supra*, §1.04, at 6-7 (citation omitted).  This view has also been endorsed by Chief Justice William H. Rehnquist:

*Full civil justice reform will not likely be accomplished until we rethink the manner in which litigation is paid for in this country, and until better incentives exist to reward lawyers for early resolution of controversies and efficient handling of cases*, instead of providing a disincentive, as the present hourly rate often does.

*Remarks of the Chief Justice for the Distinguished Citizen Award*, February 5, 1994, at p.10.

(emphasis added), JA Vol. I Ex. 38.

The Supreme Court has emphasized that private actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler*, 472 U.S. at 310 (quoting); *see also Enron*, 235 F.Supp.2d at 593. Private attorneys should be encouraged to take the risks required to represent those who would not otherwise be protected from securities fraud. Accordingly, an award of the fees requested herein would be fully consistent with important public policy considerations.

## VI. CONCLUSION

Based on each of the factors discussed above, Plaintiff's Counsel respectfully requests that the Court award them a fee of $1,100,000, which would be 30.55 % of the Settlement Fund, and reimbursement of expenses of $500,000.

Respectfully submitted,

**PATTON ROBERTS, PLLC**

By:__/s/ Sean F. Rommel_____
Sean F. Rommel
State Bar No. 24011612
2900 St. Michael Drive, Suite 400
P. O. Box 6128 75505
Texarkana, Texas 75503
(903) 334-7000
(903) 334-7007 (facsimile)

**PLAINTIFFS' LIAISON COUNSEL**

**MILBERG WEISS LLP**
Clifford S. Goodstein
One Pennsylvania Plaza
New York, New York 10119
(212) 594-5300
(212) 868-1229 (facsimile)

**NIX, PATTERSON & ROACH, LLP**
Bradley E. Beckworth
205 Linda Drive
P.O. Box 679
Daingerfield, Texas 75638
(903) 645-7333
(903) 645-4415 (facsimile)

**PLAINTIFFS' CO-LEAD COUNSEL**

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the foregoing document was served electronically on all counsel who are deemed to have consented to electronic service on this 5th day of February, 2008.

/s/ Sean F. Rommel
Sean F. Rommel